We will hear argument next in No. 231980, Juniper Networks v. Swarm Technology. Ms. Boyd. Good morning, Your Honors, and may it please the Court, my name is Karen Boyd. I'm representing the appellate Juniper Networks, who is the petitioner on ITR for the Board. Unless Your Honors have a different preference, I'll first address the construction of the negative limitation without any communication with the controller, and why the communication that it prohibits is two-way information exchange between a coprocessor and a controller. Then I'll turn to why under the incorrect construction applied by the Board that allowed for both one-way and two-way information exchange that the Young-Apple-Talkbook combination still invalidates the patents at issue. And finally, I'll explain why that Apple-Young-Obviousness argument is properly fully considered here, including the particular parts of the argument raised in the reply brief in response to the patent owner's arguments. So the claim term at the center of this appeal for both the 275 and the 004 patent is, there is a system that needs to accept multiple coprocessors, quote, on a plug-and-play basis without any communication with the controller. The Board focused on, for claim construction, the parties originally said that plain and ordinary meaning applied. The Board said that that's what it was doing, but then it said, well, what is the plain and ordinary meaning? And said, well, we look at any communication, any is a broad term, and so any communication should include one-way information transfer and two-way information transfer. And I will admit that the Board stopped one word too soon in looking at this claim language. What this negative claim limitation prohibits is any communication with the controller. And I think that with word is very important. With is a normal English word. Prepositions matter. On something is different from under something. With is another preposition. And it implies and it means that there is communication back and forth. I don't see that. I feel as if I am communicating with you, even if you stay silent and give me no response whatsoever. Haven't I communicated with you once you receive it? I think that's a good analogy. And something that I have thought about in preparing for this is talking at someone versus talking to someone versus talking with someone. And I think those are three different things. When you talk at someone, you don't even know if they're receiving it. There's no way to... What is your intrinsic evidence that supports that? Or even extrinsic evidence that supports that? Because I have the same view as Judge Stark that you still could communicate. It's whether the co-processor is communicating with the controller. And you've got two things there. And one of them is communicating. One of them is sending information. But it's sent to the controller, right? It is sent broadly. And this is actually a different part of the argument. But let's go back to the intrinsic evidence on one-way versus two-way communication. So every time that the term communicate or communication is used in the specification, it's either communicate with or it doesn't really specify. Or there is one section where it is clearly two-way information transfer back and forth that is communicated. But that's being discussed in the specification. I think the more important intrinsic evidence that supports this beyond what's in... Beyond the claim language itself is the purpose of the invention. And the purpose of this element is the idea of plug and play without any communication with the controller. The whole purpose of it is to reduce the controller resources that are required for this system. Where is that stated in the specification? That is... Your Honor, it will take me a moment to find that particular citation. And so I'm happy to provide that during my rebuttal time if that's a more efficient way. If that's what you prefer to do. I think it's a very important question, though, to your argument. Because I'm having a hard time seeing that in the specification. Okay. Were you thinking about the general observation just at the very end of the background section about multiprocessor architecture needed, which reduces CPO management overhead? Or is there something different? That is part of it. This is sort of the raison d'etre of the patent. So it is throughout the specification. But that certainly is an example, Your Honor. Thank you. So another piece of intrinsic evidence that supports this idea is that in the claim language in claims 8 and 9 of the O04 patent, that uses a different term. For one-way communication, those claim terms use the term notify. It's not the same element, but it is a different word that's used in those claims that means something different. Okay. The extrinsic evidence also supports the construction of without any communication with the controller being about two-way information transfer between the controller and the coprocessor. The expert for Juniper gave testimony about that in his expert report, and in deposition, the expert for the patent owner also says, and sort of out of nowhere, says, by the way, when there's only one-way communication, data packets going out and not being responded to or nothing happening from the controller based on those data packets, that isn't communication. But the board found that not to be credible, kind of at their own sponsor's invitation, and we usually defer to a board credibility finding, don't we? Certainly a credibility finding is normally deferred to, but here, the reason for the determination that the board said that this was not credible was that it was inconsistent with the expert's other report. To reject a position taken, sort of a voluntary position taken by an expert about what a term in this patent means, because it is not the same as what he said before, it's kind of ignoring the point of how do people of ordinary skill in the art use this term. Is it an abuse of discretion for the board to conclude we're going to use this term? We're just not going to put any weight on what he said in the deposition? I believe it is not an abuse of discretion, but I think that the fact that the extrinsic evidence separately supports the intrinsic evidence and the purpose of the patents, as well as the normal English language of the difference between notify and communicate with, it is another piece of evidence that it's not dispositive. And so I think that that's where the abuse of discretion standard, it doesn't change the decision. It supports a different decision as well, though. Yes, Your Honor? Even if the term without any communication with the controller is construed to include both two-way information transfer and one-way information transfer, the Apple-Talkbook-Leung combination should be found to invalidate the term. And that's because the combination does not necessarily and always result in even one-way information transfer. Why is that? I mean, because the Apple-Talkbook does say, doesn't it, that there's communication? Does data packet transfer, that there's a data packet that's broadcast? And the question is, does the controller ever receive that information? And so the evidence that was provided to the board was that if an Apple-Talk packet, I'm sorry. I apologize, Your Honor, I think I had the references mixed up there. It's the Apple-Talk packet, Apple-Talk sends data packets. And if it is sent to a Leung controller in a combination, Juniper presented evidence to the board that the controller would ignore it or discard it. It doesn't receive the information. It's sort of like when you ask your teenagers to clean their rooms and they just, you know, it falls on deaf ears. Do they still communicate with them, even if they don't listen? I mean, you get to say the next day, I asked you to do that and you know that. But if they haven't done anything and they haven't cleaned their room and they haven't said, I can't clean my room. So they can say, you never told me to clean my room, can they say that? I've certainly had them say that. But is it accurate? Communication, though, is there a communication that's, effective communications that has happened there is the question. Does the claim say effective communication? It says communication with. It says any communication. It says any communication with the controller and the purpose, again, is to limit what the controller has to do. And you're saying the proper construction requires at least receipt by the controller of the community. And that is that is not disputed by sworn to my to my knowledge. The way that they have talked about one way communication is that the communication does need to be received. The information does need to be understood. And Juniper presented evidence that because of the way that AppleTalk and Yong would be combined to use the plug and play components of the AppleTalk book, that you would not, that the controller wouldn't necessarily receive any of that information. Even if it was broadcast by AppleAppleTalk. You are well into your rebuttal time. Maybe you want to reserve the rest of this time for rebuttal. Yes, I will do that. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I would like to pick up right where Ms. Boyd left off with regard to receiving the communication. So AppleTalk Appendix 802 quoting here, quote, a broadcast packet doesn't travel to one particular node, but is sent to every node on the network. In turn, and this is the key part, every node receives a broadcast packet, and if appropriate, responds to it. So I don't think there's any question in AppleTalk whether the packet is received. You concede, though, that it must be received by the controller in order to be one way communication. Yes, yes. You're just saying it is received. Yes, absolutely. So I think as I heard Ms. Boyd, I'm not sure whether I heard this right, that she was talking about whether that would be true in the combination of AppleTalk and Leong. I don't understand exactly whether I heard that right or what it would mean. Is it clear that if it's in AppleTalk, then it would also be in the combination? Was there something about combining with Leong that might undo that piece, that little in turn is received piece of AppleTalk? Right. So I'll try to characterize as best as I can Juniper's argument on that and respond. I think Juniper's argument was that AppleTalk received the packet by the board for being raised late in the IPR proceeding. So while they rejected him for that reason, they did actually go on to say, but even if we did consider them, they still don't get us there. And so the argument I think that Juniper raised on this issue was that if you further modified this combination of AppleTalk with Leong to place the packet on a particular coprocessor that they set apart as the controller, it's called the surveying unit in Leong. If you put them on different zones, and then you set up some bridges and gateways, you could block the transmission of a broadcast packet to a particular node. The reason that argument fails on the merits, in addition to being late raised, AppleTalk describes setting up zones to limit interoperability. And so that's a way to reduce their network traffic. But the controller has a need to communicate with the task pool. So do the coprocessors. Can I make sure I understand something? Are you saying the only basis for saying that the combination wouldn't have the controller receive the broadcast would be if zones were used? Correct. Is there any other argument being made that the combination, like modifying Leong in view of AppleTalk, there would be no need for the controller to receive the broadcast message? Not as I understand it. AppleTalk book is very clear. If you're on the network, if you're in that network, and there's a broadcast packet sent, all of the nodes receive the broadcast packet. The example provided in AppleTalk book, which is the example that Juniper relies upon in both of its petitions. I'm looking at Appendix 803, and I think it's just a little bit illustrative because it's kind of a concrete example here. You can see in the figure 411, it says use of broadcast packets, and we see exactly how this works. One of the nodes reaches out, says, any laser writers out there? And you can see the arrows pointing to each and every node on that network that they're getting that broadcast as a broadcast packet. One of them, who is a laser writer, might respond by saying, yeah, here I am. But that doesn't mean the others didn't receive it, and that it didn't create some burden or some communication disruption to have to receive it, read it, choose, I guess, not to respond to it if it's not a broadcast packet you're going to respond to. Returning, if there's no other questions, returning to the earlier portion of the discussion, on the board's construction, the construction is consistent with the specification. I think one of the key portions of the specification relevant here, I'm looking at Appendix 89. That's the O4 patent, column 10, lines 29 through 36, and then later lines 45 through 48. What's described here is how the coprocessors are admitted into the system. And it describes that the CPU or the controller is going to delegate all of this responsibility over to the task pool. It's going to give it the protocols, the authentication requirements. It's going to place it in charge of whether it's going to admit or exclude particular coprocessors. So it's now the task pool that's being entrusted with letting coprocessors in. And then further down in that same column, there's the embodiment where all of the coprocessors are even wired directly to the task pool. In fact, it goes so far as to say you could remove the switching fabric, which means there's only one communication path left for these coprocessors to communicate with any node on its particular network, and that's the task pool. So this particular example is consistent with the board's interpretation that there's no communication without any communication, whether one-way or two-way. This distinction of one-way or two-way communication is something that Juniper jams up to create this controversy, but it's not something you would expect to find in the patent specification described, because that's not how the patent looks at communication. It's trying to take the controller out of that process altogether. We don't want one-way communications, we don't want two-way communications burdening the controller. Your best argument here, as I understand it in column 10, is you're saying there's an embodiment. And in that embodiment, there's no communication whatsoever, so that supports the idea when it says without any communication, it means any. Right. Is there anything to your knowledge in the specification that even uses the phrase one-way communication or two-way communication? No, not as I understand it. The examples provided by Juniper, which were reviewed by the board, Juniper had its opportunity before the board to put forward something that would discuss this. Juniper put forward a few examples. They're not in the context of adding new coprocessors into the system, but rather, the passages cited by Juniper are in the context of coprocessors receiving tasks, processing them. But even one of those examples the board found, the communication channel phase example, was an example that supported the board's construction, because it described a form of one-way communication, where a task was retrieved from the task pool to the coprocessor. And that was just a one-way communication in the communication channel phase. Do you agree that the purpose of the patent is to reduce the use of controller resources, and if so, does that affect the claim construction? Yes, I agree with that, absolutely. One of the main goals of the patent is to reduce the burden on the controller of processing, responding, being interrupted. Any of these examples are examples of the controller having its own resources taken away, and we're trying to save its resources for more important things. The task pool is there as an intermediate device, and that's who the coprocessors communicate directly with, particularly in these limitations. I don't think it changes the claim construction. Can I ask you, I'm sure you're aware the next appeal involves, I think, the same patents. Yes. My only question is, in that appeal, I believe the petitioner persuaded the board that all of claims 1 to 12 of the 004 are unpatentable. If we were, and I'm not saying we would, but if we were to affirm that they're unpatentable, 1 to 12 in that appeal, would that be a problem? Would we have to decide anything about the 004 in this appeal? Well, for the 275 patent, yes. For the 275, I'm just talking about the 004. Right, if the 004 patent is declared invalid on the one hand, then... Right, even though you prevailed on the IPR in this case on some of those claims, if we affirm they're non-survival in the later appeal, then we have to decide anything about the 004 with the moot in this appeal. Is that right? I would understand it that way. One last point, just to throw out there, and I'll conclude. I think it's important to take a look in this case, because this is the root cause for a lot of the issues that we're here discussing today. In the 004 and 275 petitions, particularly the section that we're speaking about today, Juniper calls it element 1.5. That section in both of the petitions describes the motivation to combine. It describes the likelihood of success. It describes the plug-and-play, the dynamic acceptance. But you won't find its description of how the Leon Apatow book meets this limitation of doing it all without any communication with the controller. It's absent. So as an example, Appendix 238 to 244, I think that's a good place to look. It's not there, and as a result of that, these issues bubbled up and resulted the way it did. With that, I'll conclude, if there are no more questions. Thank you. Just to start, I want to confirm that we agree that if the 004 patent is invalidated separately, that it's moved here. To follow up on the question about, is the point of this patent to reduce burdens on the CPU or the controller, two different terms for the same thing, we have an acknowledgment that that is indeed the purpose of citations, including at column 1, line 61, through column 2 at line 7. I'd like to address briefly the concern that some of these arguments were raised on reply before the board. In particular, the one about the zones. And how exactly, when you combine the Apple Talk reference and the Leon reference, what happens to communication, what happens to these data packets that are sent, and are they sent across zone boundaries? There are two different things to consider about what's properly raised in reply. One is, is it a new theory of obviousness? And that is a question that's reviewed de novo under Innovasive. Here, it is the same combination using the same elements, tracking to the two different pieces of prior art, so we're not pointing to a new embodiment, we're not pointing to a new... Isn't the addition of zones, I mean the petition doesn't mention zones, but then the reply argument is that you should separate different parts of the same network using zones, and that would then cut off communication. Do I understand that right? It would cut off communication, but it is not a different embodiment, because the Apple Talk book is a single reference about a single way to do, it's about how to network these, at this point, very old Apple products. So although it's a long reference, it's all about the same reference. You can't have one zone or multiple zones in Apple Talk book, could you not? Not once you combine it with Leone, because Leone doesn't have its... How would the board or the patent owner know that was your view from reading your petition? Until you have this issue of two-way communication versus one-way communication that is raised sort of in response, and that's the other part of, is it too late to raise it on replies, is it responding to something in the opposition brief that's filed by the patent owner, and that's what this argument is doing. And that we review for abuse of discretion, right? And that is reviewed for abuse of discretion, yes, Your Honor. And I would just want to point quickly to the case Apple versus Andrea Electronics, 949 Fed Third, 697. This is actually cited in the appellant's briefs. There, this court held that the board improperly concluded that Apple's reply brief raised a new theory of patentability. The comment is that Apple's legal ground did not change in its reply. Its reply still asserted that claims six through nine would have been obvious over two references. Here, the same Leone plus Talk book combination is relied on in reply, and the zones argument is simply responding to the previously relied on combination in response to the petition.